# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN BRADSHAW, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )    Case No. CIV-16-388-R<br>) |
| UBER TECHNOLOGIES, INC. and RASIER, LLC, | )<br>)<br>) |
| Defendants. | ) |

## ORDER

Plaintiff in this putative class action asserts claims under Oklahoma and federal law against Uber Technologies, Inc., and Rasier, LLC, a related entity, referred to collectively by Plaintiff as "Uber". Before the Court are Defendants' Motion for Judgment on the Pleadings (Doc. No. 48) and their Request for Judicial Notice (Doc. No. 49). The Request for Judicial Notice drew no opposition from Plaintiff and the Court therefore grants the request. Plaintiff filed his opposition to the Motion for Judgment on the Pleadings and Defendants filed a reply brief in support thereof. Accordingly, the motion is at issue and ripe for consideration. Having considered the parties' submissions, the Court finds as follows.

Uber is a ride sharing service. Uber drivers, including Plaintiff, secure fare riders via Uber's mobile application. As described by other courts in the context of similar lawsuits, the application matches a rider with an available Uber driver in the vicinity and informs the rider of the estimated fare. If the rider accepts the fare, the available Uber driver

is dispatched to the rider. At the end of the ride, the passenger completes the transaction by paying Uber through the mobile application. Uber remits to the driver a percentage of the fare paid to Uber by the rider, on a weekly basis.

Mr. Bradshaw began driving UberX in February 2014, and continues to do so. Complaint, ¶ 27. Plaintiff contends Uber misclassifies its drivers as independent contractors rather than employees, doing so in order to avoid state and federal requirements regarding minimum wage, overtime compensation, and expense reimbursement. Plaintiff contends that Uber controls the drivers' wages, hours, working conditions, and qualifications, and that it monitors their performance. An Uber driver is rated by an Uber rider, based on a five-star rating scale. If an Uber driver fails to maintain a rating of 4.5 out of 5 stars, the driver is in danger of deactivation of his Uber account, which prevents the driver from matching with Uber riders. As a result of the above, Plaintiff contends that Uber drivers should be considered employees not independent contractors, and that as a result, they are entitled to additional compensation.

Mr. Bradshaw alleges that on average he drives thirty hours per week. *Id.* at ¶ 28. In 2015 Plaintiff contends he drove 40,000 miles, grossing $23,872.00. His net, after expenses, however was $372.00. Plaintiff alleges he incurred expenses in the course of driving for Uber, including fuel, insurance, cleaning, and maintenance costs, for which he was not reimbursed by Uber. He contends that despite working 1500 hours in 2015 he was not paid overtime for the weeks in which he worked in excess of 40 hours, nor was his compensation sufficient to comport with the federal minimum wage requirement. Plaintiff also complains that Uber falsely informs riders that a component of the fare is a gratuity

for the driver, and thus tipping is not necessary. Finally, Plaintiff contends that Uber misled him in its marketing materials, whereby it guaranteed a person could earn $2000 per week driving Uber. Based on these allegations Plaintiff alleges eight causes of action, some of which encompass more than one claim. Specifically he seeks to recover on his behalf and on behalf of similarly situated persons on theories that (1) Defendants violated the Oklahoma Minimum Wage Act and the Oklahoma Administrative Code regarding payroll records, OAC 380:30-3-3(d); (2) tortious interference with business relations; (3) breach of two separate contracts; (4) unjust enrichment; (5) conversion; (6) fraud and/or intentional or negligent misrepresentations; (7) promissory estoppel; and (8) violation of the Fair Labor Standards Act ("FLSA") because Defendants failed to pay minimum wage or overtime compensation as required by federal law. As noted, Defendants seek judgment on the pleadings.

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). And in deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court considers whether, per the pleading requirements of Rule 8(a)(2), the complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotation omitted). Further, the Court "must

accept all the well-pleaded allegations of the complaint ... and must construe them in the light most favorable to the [non-moving party]." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).

Defendants contend the Court should grant judgment on Count I of the Complaint because the Oklahoma Minimum Wage Act does not apply to Defendants, who concede they are covered by the FLSA. The pertinent statutory language provides:

> This act shall not apply to employers subject to the Fair Labor Standards Act of 1938, as amended, and who are paying the minimum wage under the provisions of said act, nor to employers whose employees are exempt under paragraph (e) of this section.

Okla. Stat. tit. 40 § 197.4(d)(footnote omitted). As indicated by the language of the statute, the question is two-fold, whether Defendants are subject to the FLSA and if so, whether it was paying minimum wage.

Although Defendants concede they are covered by the FLSA, they make no such concession with regard to Mr. Bradshaw or other Uber drivers as their employees. Additionally, Plaintiff is entitled to rely on "[a]lternative theories of relief" at the pleading stage of litigation. *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002). *Courtright v. Bd. of County Comm'rs*, 2008 WL 2446138 (W.D.Oka. June 13, 2008), upon which Defendants rely, does not support their contention that regardless of whether a Plaintiff has pled a minimum wage claim that coverage by the FLSA precludes a claim under the Oklahoma statute. *Courtright* was not, as Defendants argue, factually indistinguishable from this case, because it was an overtime case, and Oklahoma law does not mandate overtime pay rates, unlike the FLSA. *Id.* at 3 ("Plaintiff does not allege that

4

his mandatory work requirements resulted in his being paid less than the minimum wage."). Accordingly, because Plaintiff is entitled to rely on alternative pleading, the relevant issue is whether he has sufficiently pled a claim for violation of minimum wage under either Oklahoma law or the FLSA, which will be addressed subsequently herein.

Defendants next contend judgment in their favor is appropriate on Plaintiff's claim that they failed to maintain payroll records because § 380:30-3-3(d) of the Oklahoma Administrative Code, which sets forth the requirement, does not authorize a private right of action. Neither the Oklahoma Minimum Wage Act nor the relevant regulations contain a provision conferring upon an employee the right to sue an employer to enforce a payroll records obligation, nor is there any provision in Oklahoma law permitting an award of damages in the event proper records are not maintained. Plaintiff contends, however, that there exists an implied cause of action. The Court disagrees.

In *Holbert v. Echeverria*, 744 P.2d 960 (Okla. 1987), *superseded on other grounds by statute*, the Court provided a three-part test to determine whether a statute implies a private right of action:

> (1) the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) some indication of legislative intent, explicit or implicit, suggests that [the legislature] wanted to create a private remedy and not to deny one; [and] (3) implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme.

*Id.* at 963 (citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Although Plaintiff may well be within the class of people for whose benefit the regulation was enacted, there is simply no indicia of legislative intent to use the regulation to create a private remedy with regard to an employer's duty to maintain records, nor any indication

of an appropriate remedy for such violation. The Court concludes, consistent with Defendants' contention, that there is no private remedy for violation of § 380:30-3-3(d), and accordingly, Defendants are entitled to judgment on this portion of Count I.

In Count II Plaintiff alleges a claim for tortious interference with business relations by Uber. "Uber interfered with the continuing business relationship between drivers and fares—a separate relationship from that between either Uber and its Drivers or Uber and its riders, and one to which Uber is not a party—whereby riders would have paid gratuity to Drivers, including Plaintiffs, absent Uber's interference." Complaint ¶ 73. "Were it not for Uber's misrepresentations regarding gratuities, riders would have left a tip for drivers as is customary in the car-service industry. Uber knew that it would be a benefit accruing to the Drivers at the time it discouraged tipping by telling passengers tipping is included in the fare and knew that interference was certain or substantially certain to occur as a result of its conduct." Complaint ¶¶ 82-83.

> In order to recover for tortious interference with business relations, [a plaintiff] must show: (1) it has a business or contractual right that was interfered with; (2) the interference was malicious and wrongful, and neither justified, privileged nor excusable; and (3) damage was proximately sustained as a result of the interference. *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979).

*Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *5 (N.D. Okla. Sept. 12, 2016). Although Defendants contend Plaintiff is required to identify specific third parties' whose relationships with Defendants were subject to interference, the Court disagrees. Plaintiff alleges Defendants informed Uber riders via advertisements and Uber's website that no gratuity was expected. The reasonable

inferences of the Complaint are that all of the riders who rode with Plaintiff were informed of and abided by the "no tip needed" statements Defendants allegedly made. The Court finds, however, that Plaintiff has failed to allege any facts to establish a business or contractual **right** vis-à-vis the riders with which Defendants interfered. There are no allegations of a contractual or business right to a gratuity as required to support the claim for tortious interference with business relations. As such, the Court finds that Plaintiff has failed to state a claim for tortious interference with a contract or business relationship, and Defendants are entitled to judgment on the pleadings with regard to Count II.[1]

In Count III Plaintiff alleges that Uber has an implied-in-fact contract with him, as a driver, requiring that it remit all gratuities as well as to reimburse him for expenses. Complaint ¶ 86. Plaintiff further asserts that Uber drivers are third-party beneficiaries of the implied contract between Uber and its riders related to gratuity. Plaintiff contends that the implied contract between Uber and Uber riders requires Uber to remit tips to the drivers. Plaintiff contends "the terms of [the implied contract] were incorporated by reference from certain advertisements or statements Uber made on various webpages." *Id.* at ¶ 87. Defendants seek dismissal of each claim for breach of implied contract, asserting that the Complaint fails to allege sufficient facts, in part because there is an express contract between drivers and Uber, thereby precluding creation of an implied-in-fact contract.[2]

---

[1] In support of his position, Plaintiff relies on cases presenting different theories of tortious interference, including tortious interference with business relations, which he pled, as well as tortious interference with prospective economic advantage, which claim does not appear in the Complaint. The Court notes that the facts as plead align with a claim of tortious interference with a prospective economic advantage, although Plaintiff does not currently assert such a claim.

[2] The exhibits to the Request for Judicial Notice include December 11, 2015 Technology Services Agreement, which is the most recent agreement executed by Plaintiff. The Court may consider the agreement without converting the instant motion to a motion for summary judgment because the document is central to his claims and is referenced in

> A contract is an agreement to do or not to do a certain thing. Okla. Stat. tit. 15, § 1. It is essential to the existence of a contract that there should be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Okla. Stat. tit. 15, § 2. A contract's terms must be reasonably certain as to establish an enforceable contract. *Heldenbrand v. Stevenson*, 249 F.2d 424, 427 (10th Cir.1957). Title 15 also provides that a contract is either expressed or implied. Okla. Stat. tit. 15, § 133 The existence and terms of an implied contract are manifested by conduct. *Wattie Wolfe Co. v. Superior Contractors, Inc*. 417 P.2d 302, 308 (Okla.1966).The implied in fact doctrine applies only when there is no tangible evidence from which to determine whether in fact an agreement exists. *Watkins v. Watkins*, 177 P.3d 1114, 1118 (Okla.2007). The Court in such situations is compelled to resort to the conduct of the parties. Contracts implied in fact arise where the intent of the parties is not expressed. *Ray F. Fischer Co. v. Loeffler–Green Supply Co.,* 289 P.2d 139 (Okla.1955). However, an express or written contract excludes the possibility of an implied contract of a different or contradictory nature. *Fox v. Cities Serv. Oil Co.*, 201 Okla. 17, 200 P.2d 398, 400 (1948).

*Advance Food Co. v. Nebraska Beef, Ltd.*, No. CIV-08-1139-M, 2009 WL 3698472, at *2 (W.D. Okla. Nov. 4, 2009).

In response to Defendant's contention that there can be no implied contract because of the existence of the express contract, the Technology Services Agreement, Plaintiff argues that drivers could not contractually agree to deprive themselves of their federal right to gratuities. In support of this proposition, Plaintiff cites to 29 C.F.R. 531.52, entitled "General characteristic of 'tips.'" "A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who

---

his Complaint. Furthermore, Plaintiff does not dispute its authenticity. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

8

shall be the recipient of the gratuity." Accordingly, because, as alleged in the Complaint tips were not discretionary or gratuitous, it appears the unidentified amount at issue herein was not truly a "tip" for purposes of the FLSA regulations as cited by Plaintiff. *See Pellon v. Business Representation Intern., Inc.*, 528 F.Supp.2 1306 (2008). Therefore, Plaintiff cannot rely on the regulation as a basis for overcoming any contrary terms of an express agreement.

The Technology Services Agreement addresses gratuities. It provides, "You acknowledge and agree that the Fare provided under the Fare Calculation is the only payment you will receive in connection with the provision of Transportation Services, and that neither the Fare nor the Fare Calculation includes any gratuity." In light of this express contract, Plaintiff has failed to state a plausible claim for relief under his theory that he had an implied in fact contract with Defendants. As such, Defendants are entitled to judgment on the pleadings with regard to Plaintiff's claim that they breached an implied in fact contract with drivers regarding gratuities.

Defendants are similarly entitled to judgment on the pleadings with regard to Plaintiff's contention that as a driver he was a third party beneficiary of an implied contract with riders regarding gratuity. Currently before the Court there is no express agreement between Defendants and riders that contain terms regarding gratuities.[3] Accordingly, the

---

[3] Defendants refer the Court to a website, representing that the relevant agreements can be accessed via the site. Plaintiff objects, correctly noting that which agreement or agreements apply cannot be discerned at this time. Accordingly, the Court declines to consider documents outside the pleadings with regard to this particular breach of contract claim. Thereafter Defendants assert that Plaintiff admits the existence of an agreement, quotes purported terms thereof, and cites to a portion of the record that does not contain the quoted language. The Court declines to consider any express agreement between riders and Defendants at this juncture.

question is whether there is an implied agreement between riders and Defendants under which Plaintiff is a third party beneficiary with regard to gratuities.

Under Oklahoma law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." 15 O.S. § 29. "As a general proposition, the determining factor as to the right of a third party beneficiary is the intention of the parties who actually made the contract." *G.A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & Sur. Co.*, 545 P.2d 746, 749 (Okla.1976). In order to proceed on this theory, Plaintiff must first allege sufficient facts to establish the existence of an implied contract between Uber and its riders and his status as a third party beneficiary of said agreement with regard to gratuities. Accordingly, Plaintiff must plead facts to support both formation and breach of a contract, including whether there was a meeting of the minds as to essential terms.

With regard to whether Plaintiff can establish that he was a third party beneficiary, the Court finds the Complaint fails to contain sufficient facts to establish the existence of an implied contract. The Complaint is devoid of any allegations regarding the amount of the alleged gratuity that Defendants and riders agreed would be paid to drivers. *See Mumin v. Uber*, Case No. CIV-15-6143, at p. 39 (E.D.N.Y. Mar. 8, 2017)(noting that reliance on language that the "tip is included" is likely not sufficient to create an obligation by Uber to remit tips to the driver plaintiff and further "there is no allegation as to an agreement between Uber and riders as to the amount of tip—arguably the most important term of the alleged implied-in-fact contract."). Accordingly, Defendants are entitled to judgment on

the pleadings on Plaintiff's breach of implied contract theory with regard to an alleged contract between Defendants and riders.

Defendants seek judgment on Plaintiff's unjust enrichment claim. Unjust enrichment "is a recognized ground for recovery in Oklahoma," *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla.Civ.App.1996), and "results from the failure of a party to make restitution in circumstances where it is inequitable," *Harvell v. Goodyear Tire & Rubber Co.,* 164 P.3d 1028, 1035 (Okla.2006). "Under Oklahoma law, a party may only recover under this theory by showing 'enrichment to another coupled with a resulting injustice.'" *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir.1991) (*quoting Teel v. Public Serv. Co.*, 767 P.2d 391, 398 (Okla.1985)). As an equitable claim, unjust enrichment generally is unavailable where the plaintiff has an adequate remedy at law, *Harvell*, 164 P.3d at 1035, such as "when an enforceable express contract regulates the relations of the parties with respect to the disputed issue," *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir.1997).

Plaintiff argues that he is relying on alternative pleading. The Court notes, however, that he alleged in the Complaint that he executed the December 11, 2015 TSA, which contains terms that expressly govern whether drivers are entitled to be paid gratuities. Thus, as a matter of law he may not recover under a theory of unjust enrichment. As concluded by the court in *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534 (N.D.Calf. Dec. 5, 2013):

> Because Plaintiffs allege that the "gratuities" Uber collects are part of the fare paid by customers, and the Licensing Agreement governs how fares will be divvied up between drivers and Uber, the agreement covers the subject

11

matter of *quantum meruit* claim: compensation for services rendered. Plaintiffs have failed to cite any binding authority holding otherwise.

*Id.* at \*13. *See also Sisemore v. Dolgencorp LLC*, 212 F.Supp.3d 1106 (N.D.Okla. 2016)(rejecting theory of alternative pleading with regard to an unjust enrichment claim in the face of an express agreement).

Plaintiff concedes that his claim for conversion is inappropriate, but seeks leave to amend to assert a claim for chose in action; Defendants argue amendment would be futile. The Oklahoma Supreme Court in *Shebester v. Triple Crown Insurers*, 826 P.2d 603 (Okla. 1992), said an action for conversion would not lie to recover money, as money is not tangible personal property, *see id.*, 826 P.2d at 608. However, the same court subsequently indicated an action to recover money, a "thing in action," may be referred to as an action for conversion. *See Beshara v. Southern National Bank*, 928 P.2d 280, 289 n. 26 (Okla. 1996); *Brown v. Oklahoma State Bank & Trust Co. of Vinita*, 860 P.2d 230, 232 n. 4 (Okla. 1993)(The common rule in Oklahoma is that only tangible personal property may be converted. When a person has a right to recover money, a chose in action exists. This is the action to bring for intangible personal property such as money. . . . For simplicity, we refer to the action as one in conversion."). Because the basis for Defendant's Motion for Judgment on the Pleadings is merely the result of mislabeling the claim, in a manner accepted by the Oklahoma Supreme Court, the Court concludes that Defendants are not entitled to judgment on the pleadings on this basis. Furthermore, amendment would not be futile in light of Plaintiff's allegations that gratuities were earmarked for drivers but retained by Defendants, thereby interfering with Plaintiff's rights to his intangible property.

Defendants seeks dismissal of Count VI of the Complaint, Plaintiff's claim for fraud and/or intentional or negligent misrepresentation, asserting that Plaintiff's Complaint fails to meet the requirements of Rule 9(b).

> Federal Rule of Civil Procedure 9(b) provides, in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud ... and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir.2006) (internal quotations and citations omitted). Further, Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly ...; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them-and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and how. *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986). In Oklahoma, "[t]he elements of fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his/her own detriment." *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla.2003) (*citing Gay v. Akin*, 766 P.2d 985, 989 (Okla.1988)).

*C&S Roofing & Fencing, LLC v. State Farm Fire & Cas. Co.*, No. CIV-15-527-M, 2015 WL 4775468, at *2–3 (W.D. Okla. Aug. 13, 2015). Plaintiff alleges:

> 43. Uber misled Plaintiff as to the amount of income that he can earn driving for Uber. Uber told Plaintiff that drivers can earn $2,000 a week by driving for Uber. Plaintiff did not earn the guaranteed hourly rate that Uber promised, regardless of his working more than a 40-hour week.
> ***
> 101. Uber represented to Plaintiff and other Drivers that they would receive gratuities, surge fares, and cancellation fees. Uber did not pay these monies as promised.

13

> 102. These misrepresentations were material because they affected Plaintiff and other Drivers' decisions to continue driving for Uber.
> 103. Uber knew at the time it made these misrepresentations—or, at the very least, made the misrepresentations recklessly—that it would not pass along these monies to Plaintiff and other Drivers based on its past practices of not doing so.

Complaint ¶¶ 101-02. Paragraph 43 also contains what appears to be an advertisement that appeared on Facebook, stating, "[d]epending on your market, it is easy to make $2,000 a week driving for Uber. Click the link and sign up today, and enjoy a $100-$500 sign up bonus!"

The Complaint is devoid of any additional allegations regarding surge pricing or cancellation fees, and accordingly, the Court concerns itself with the issue of guaranteed income and gratuities as clearly there are insufficient allegations to support a claim of fraud regarding surge pricing or cancellation fees. The Court further concludes that the Complaint fails with regard to guaranteed income. Plaintiff Bradshaw does not identify any particular statement that led him to believe Uber guaranteed income of $2,000 per week. The Facebook advertisement at paragraph 43 includes the caveat, "[d]epending on your market." The undersigned concludes that Plaintiff's failure to provide sufficient factual averments regarding what misrepresentation was false or that he relied upon a particular representation, in light of the caveat in the only advertisement he cites, is fatal to his claim for fraud or negligent misrepresentation with regard to guaranteed income.

The same holds true with regard to Plaintiff's claim of fraud related to gratuities. Plaintiff states throughout the Complaint that Uber informs customers that there is no need to include a gratuity. He further alleges that drivers are instructed to decline gratuities

directly from riders. He does not allege, however, any false statement allegedly made to or perceive by him regarding gratuities upon which he relied. Plaintiff's allegation that "Uber represented to Plaintiff and to other Drivers that they would receive gratuities, surge fares, and cancellations fees" is insufficient to support his contentions of fraud. Complaint, ¶ 101.

With regard to gratuities, on the issue of fraud the Court is concerned with Plaintiff's alleged reliance on Defendants' alleged misrepresentations. The Complaint, however, does not set forth any basis for concluding that he relied on any misstatement by either Defendant with regard to gratuities, that tip was included or otherwise unnecessary. Those statements were made to third parties and Plaintiff has not established that he can premise a fraud claim on misstatements made to others. The Complaint is replete with allegations that Defendants informed riders tips were not necessary, were included in the fare, and that nevertheless Uber did not pay such monies to drivers. These allegations, however, do not implicate Plaintiff's reliance. Accordingly, Defendants are entitled to judgment on the pleadings with regard to Plaintiff's fraud/misrepresentation claims.

Defendants seek dismissal of Plaintiff's promissory estoppel claim, Count VII of the Complaint. In order to sufficiently allege a claim for promissory estoppel Plaintiff must allege: 1. a clear and unambiguous promise by Defendant; 2. foreseeability by the Defendants that the promisee would rely upon it; 3. reasonable reliance upon the promise to the promisee's detriment; and 4. hardship or unfairness can be avoided only by the promise's enforcement. *Barber v. Barber*, 77 P.3d 576, 579 (Okla.2003). Like Plaintiff's fraud and misrepresentation claims, the promissory estoppel claims fail because Plaintiff fails to sufficiently identify promises upon which he relied to his detriment. Rather, he

alleges promises to third parties, the riders, that Defendants allegedly failed to keep.[4] Furthermore, although § 90 of the Restatement of Contracts contemplates the application of promissory estoppel by a third person, the facts alleged by Plaintiff do not provide any basis for concluding that he, as the third party, relied on promises made by Defendants to riders regarding gratuities. Accordingly, Defendants are entitled to judgment on the pleadings on Count VII of the Complaint.

Plaintiff's final claims allege violation of the FLSA, both its minimum wage and overtime provisions. The core issue in this case is whether Defendants mischaracterized Plaintiff and other drivers as independent contractors rather than employees, entitled to certain protections under federal law. In the motion for judgment on the pleadings, Defendants do not take issue with Plaintiff's pleading sufficient facts to establish that they were his employer for purposes of the FLSA. Defendants contend, however, that Plaintiff failed to plead sufficient facts to support his contention that he was paid less than the statutory minimum wage or that he was entitled to overtime pay.

With regard to Plaintiff's minimum wage contention, Defendants argue he fails to "allege how he incurred those expenses while 'working for Uber.'" Doc. No. 48, p. 20.[5]

---

[4] Plaintiff argues that "Uber's attempt to draw a bright line between representations to drivers and representations to passengers, as if these two groups were somehow walled off from each other, is nonsensical. Any suggestion that promotional materials directed at passengers would never be viewed by drivers simply blinks reality." Doc. No. 51, p. 18. Plaintiff, however, fails to allege that as a driver he relied on promotional material directed to riders. The Complaint directs allegations regarding advertisements and communications to the riders, indicating the drivers were hurt by the riders' reliance on the statements. There are not, however, facts from which the Court can infer that drivers relied upon alleged misrepresentations to the riders.

[5] In pleading his claim that Defendants violated the minimum wage provisions of the FLSA, Plaintiff calculated his income by subtracting expenses, specifically the cost of operating his vehicle as defined by the Internal Revenue Service in 2015, from the amount he received from Defendants. Defendants challenge his assertion that the expenses were work-related.

Defendants contend Plaintiff failed to plead facts about how he was paid or how he calculates compensable time or that he was performing compensable work rather than waiting time, which Defendants assert is not compensable because Plaintiff was free to pursue personal activities without interference while waiting.

The Complaint includes the following in support of Plaintiff's contention that he was not paid the $7.25 per hour federal minimum wage as required by 29 U.S.C. § 206(a)(1)(C).

> On average, Plaintiff drives thirty (30) hours each week and Uber compensates him on a weekly basis.
>
> In 2015, Plaintiff drove 40,000 miles. He grossed $23,872.00, but after paying his employment related expenses, which using the federal rate of 57.5 cents per mile, were $23000, Plaintiff netted only $872.00 for the year, even though he worked 1,500 hours that year. In other words, he made just 58 cents per hour. In addition, the $23,000 for expenses did not include car washes, which cost him $300 per year, as well as satellite radio, which cost him $200 per year.
>
> ***
>
> When Plaintiff first started, after Uber retained its portion of the fare but before paying his employment related expenses, Plaintiff earned between $500 and $600 per week. Plaintiff's expenses, including gas, insurance, lease payments, and car repairs, were approximately 30% of any amount earned ($150 to 180 each week).

Complaint ¶¶ 28, 29, 31. Construing these allegations in the light most favorable to the Plaintiff, the Court concludes he has sufficiently alleged facts to support a minimum wage claim, at least for 2015.

With regard to 2014, the year Plaintiff started driving for Uber, the facts pled by Plaintiff do not support a plausible claim for denial of minimum wage. As alleged in

paragraph 31 of the Complaint, net income of $350 per week based on a thirty-hour workweek results in an hourly rate of $11.67, above the federal minimum wage.

With regard to 2015, however, the Complaint can be read as alleging that Plaintiff drove for approximately 30 hours per week, that he drove a total of 1500 hours that year, and that he was paid $23,872.00 for his time. Although Defendants query whether there is waiting time calculated as part of that 1500 hours, which is not compensable, Plaintiff alleged he was driving and the Court accepts this fact as true. Furthermore, although Defendants challenge that Plaintiff incurred expenses while "working" for Uber, his allegations include reference to the reimbursement rate utilized by the Internal Revenue Service in 2015, $.575 per mile, the cost of operating an automobile for business purposes. Although the Court has no doubt the issue of whether all 40,000 miles or 1500 hours was compensable time will be litigated in this action at some point, Plaintiff's allegations are sufficient to avoid judgment on the pleadings on this issue. Furthermore, as noted by the Court in *Yucesoy v. Uber Techs.. Inc.,* 2016 WL 493189 (N.D. Cal. Feb. 9, 2016), if Plaintiff's calculations include waiting time, such time is not *per se* excluded. Rather, the inquiry on whether waiting time is compensable is based on the particular facts of a given case. *See Gilligan v. City of Emporia, Kan.*, 986 F.2d 410, 413 (10th Cir. 1993)(addressing at the summary judgment stage whether time on call is compensable time).

Thus the question is whether Plaintiff has sufficiently pled that he was denied payment at the $7.25 for a given work week. The average hourly wage is determined "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid,"

18

29 CFR § 778.109. Despite the regulation being premised on hours in a single week, the Court finds that Plaintiff has sufficiently alleged a minimum wage claim despite not identifying any given week as the particular period when he was underpaid. Plaintiff alleges that after removal of business-related expenses, specifically the cost of operating his vehicle, that his pay rate was less than $7.25 per hour during 2015, the Court finds this is sufficient to plead a minimum wage claim under the FLSA and Defendants are not entitled to judgment on the pleadings with regard to this portion of Count VIII of the Complaint.

In addition to the minimum wage requirements, the FLSA requires overtime pay of one and a half times an employee's hourly wage for every hour worked over 40 hours in a week. 29 U.S.C. § 207(a)(1). Although the Tenth Circuit has not explicitly indicated what manner of pleading is necessary in an FLSA case post-*Twombly* and *Iqbal*, in *ElHelbawy v. Pritzker*, 663 Fed.Appx. 658 (10th Cir. Oct. 3, 2016), the court cited *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), and its holding that "[t]o survive a motion to dismiss, a plaintiff asserting a [FLSA] claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *ElHelbawy*, 663 Fed.Appx. at *663. After noting the standard, the court in *Landers* concluded the plaintiff had failed to meet her pleading obligations. She presented "generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA by the defendants." *Id.* at *646.

> Notably absent from the allegations in Landers's complaint, however, was any detail regarding a given workweek when Landers worked in excess of forty hours and was not paid overtime for that given workweek and/or was

19

not paid minimum wages. Although plaintiffs in these types of cases cannot be expected to allege "with mathematical precision," the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages.

*Id.* In the instant case, Plaintiff's overtime allegations are limited to the following:

For some time during his employment, Mr. Bradshaw worked in excess of 50 to 60 hours a week. At all times, Uber failed to pay overtime compensation.

Complaint ¶ 32. The remaining allegations scattered throughout the Complaint shed no additional light and provide no additional factual support for Plaintiff's overtime compensation claim under the FLSA. The Court concludes, accordingly, that Defendants are entitled to judgment on the pleadings with regard to Plaintiff's FLSA overtime claim.

Finally, Plaintiff seeks leave to amend to address any deficiencies identified by the Court. Fed.R.Civ.P. 15(a) provides that, if the pleadings are closed, a plaintiff may amend its complaint only upon leave of court or consent of the other party, although such leave "shall be freely given when justice so requires." Granting leave to amend is a matter for the district court's discretion. *Triplett v. LeFlore County, Okla.*, 712 F.2d 444, 446 (10th Cir.1983). The Court hereby grants Plaintiff leave to amend his conversion claim and his overtime compensation claim under the FLSA within 21 days from the date of this Order. In all other respects, the request for leave to amend is DENIED.

IT IS SO ORDERED this 6th day of June 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE